## Churchill's Estate.

*George J. Feit* (of *Peelor & Feit*), for exceptant.

*William E. Pierce*, for accountant.

LANGHAM, P. J., April 21, 1928.—This case came on to be heard by hearing in open court upon the following exceptions filed by George R. Churchill, a son and heir of Philander Churchill, deceased:

"Elizabeth H. Churchill, Administratrix of Philander Churchill, the Accountant, received and receipted for the sum of One Thousand ($1,000.00) Dollars, fire insurance on a two-story frame store building, the property of

the estate of P. Churchill, deceased, which building was destroyed by fire since the death of said P. Churchill, said insurance being in the name and for the benefit of the estate of said P. Churchill, and has failed to account for the said sum of $1000.00."

The history of this case, briefly stated, is as follows: Philander Churchill died intestate, leaving to survive him his wife, Elizabeth, and seven heirs. His estate consisted of personal property and possibly several pieces of real estate. One of the pieces of real estate had erected thereon a store building. John Churchill, one of the heirs, entered into an article of agreement with the other heirs, except George R. Churchill, for the purchase of the store property. After this agreement was entered into, John, in order to protect his six-seventh interest in this property, took out a policy of insurance in the sum of $1000, payable to himself. At about the same time, but no matter as to the exact date, George R. Churchill took out a policy of insurance in the sum of $500, payable to himself, in order to protect his interest. Some time after these policies were written, the agent of the insurance company, Mr. McQuilken, went to John Churchill and informed him that his policy was improperly written; that the policy should be written in favor of the Philander Churchill Estate, with a loss payable clause to him (John Churchill) as his interest may appear. The change of form of policy was accordingly made as to John's policy, but no change was made as to George's policy. It may be that the policies were written by different agents and carried by different companies. Subsequently, a fire occurred, resulting in a total loss. George was paid for his loss direct to him in keeping with his contract of insurance. John was paid for his loss, but before the insurance company would make payment to him, the insurance company required Elizabeth Churchill, administratrix of Philander Churchill, deceased, to receipt therefor in keeping with the changed contract of insurance. She did not sign the receipt, and the insurance money was paid to John. It is admitted by exceptant and all concerned that Elizabeth Churchill, the administratrix, did not receive any part of the insurance money. It is also admitted by all concerned that George paid the premium on his policy, and John paid the premium on his policy out of their own respective private funds.

Although the exceptions state that the "Accountant received and receipted for the sum of One Thousand ($1,000.00) Dollars, . . . the property of P. Churchill, deceased," the fact remains that the accountant, administratrix, never did receive a single cent of the insurance money in controversy, and only receipted therefor in order that one of the heirs, John Churchill, who had an insurable interest in the destroyed property as George Churchill had an insurable interest, except that John had a greater interest than George. George had only a one-seventh interest. John had a one-seventh interest by inheritance, the same as George, and he also had another one-seventh interest which he purchased from his brother William, and had a fee title deed therefor, and, besides, had an equitable title by purchase on an article of agreement from four of the other heirs.

We are of the opinion that the policy of insurance first written, payable to John in case of loss by fire, if any, was properly written, as it was in George's case, for the reason that the administratrix, widow of the decedent, representing the estate of P. Churchill, had no insurable interest in the property insured. This property vested in the heirs immediately after the death of P. Churchill, the same not being needed for the payment of debts.

The fact of the policy having been erroneously changed, as we hold, and the fire loss receipted for by the administratrix in order for John to get his

money, could not bind the administratrix to an accounting. It is not even claimed that the administratrix signed the check.

In our opinion, there would be as much equity in surcharging the administratrix with the amount of insurance money that George received as the amount John received. They both stood in the same relation. Both were heirs of P. Churchill. Both were protecting their own interests, and properly so. Neither of them turned the money over to their mother, the administratrix, and we are of the opinion they had no right to do so.

But it may be argued that by reason of the fire the property interest of the heirs was depreciated. Of course it was, but that is no concern of the administratrix. Neither she nor her bondsmen should be held to make good such a loss. It may be further claimed that the purchase by John on the article of agreement did not materialize; that the property eventually was purchased by another party, and John and George got all the insurance money. Of course they did, but they did not get anything they did not pay for in protection of their own interests. If John should refund anything to the four heirs who had interests not protected, that is a matter for them to settle with John. The administratrix or the bondsmen should not be held for any amount that never came into the accountant's hands. Even if the changed form of policy was correct, that fact cannot fix liability on the administratrix or the bondsmen, in view of the fact that the money was not paid to the administratrix. The administratrix neither solicited the insurance nor received the money as the result of the loss.

For the reasons indicated in this opinion, we will dismiss the exceptions. In a case of this character we are sitting as a court of equity, and we can see no equity in the consideration of a surcharge as contemplated by the exceptions. We think the proceeding was and is a proper one, because the question involved very properly arose and should be settled.

And now, April 21, 1928, this case came on to be heard by the taking of testimony in open court, and upon due consideration thereof, it is ordered, adjudged and decreed that the exceptions be dismissed.

From James L. Jack, Indiana, Pa.